WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **COLWELL CONSULTING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL PAPAGEORGE AND PPG CONSULTING LLC,**<br><br>Defendants. | Court No. 2:24-cv-01824-JCG |

## OPINION AND ORDER

Before the Court is Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order filed by Plaintiff Colwell Consulting, LLC ("Colwell" or "Plaintiff"). Pl.'s Cross-Mot. Hold Defs. Contempt Violating TRO at 8–10 ("Plaintiff's Motion" or "Pl.'s Mot.") (Doc. 29). Defendants Michael Papageorge ("Papageorge") and PPG Consulting, LLC ("PPG") (collectively, "Defendants") filed Defendants' Response to Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order. Defs.' Resp. Pl.'s Cross-Mot. Hold Defs. Contempt Violating TRO ("Defendants' Response" or "Defs.' Resp.") (Doc. 37). Plaintiff filed Plaintiff's Reply in Support of its Cross-Motion to Hold Defendants in Contempt. Pl.'s Reply Supp. Cross-Mot. Hold Defs. Contempt ("Plaintiff's Reply" or "Pl.'s

Reply") (Doc. 40).  For the following reasons, Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order is granted.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case as set forth in its August 14, 2024 Opinion and Order.  Op. & Order (Aug. 14, 2024) ("Temporary Restraining Order" or "TRO") at 1–6 (Doc. 20).  This case involves claims that Defendants breached restrictive covenants and misappropriated trade secrets and proprietary information after Papageorge left Colwell's employment.  See Compl. (Doc. 1).  Plaintiff filed an Application for Temporary Restraining Order asking the Court to restrain Defendants' ability to do business with clients that Papageorge worked with while employed by Colwell and to identify and segregate any information taken by Papageorge from Colwell and to prevent use of such information.  Pl.'s Appl. TRO (Doc. 6).  After briefing and oral argument, the Court entered a Temporary Restraining Order in this case on August 14, 2024 that: (1) "restrained [Defendants] from directly or indirectly soliciting or accepting work from any client that Papageorge worked with while employed by Colwell Consulting, LLC" and (2) required Defendants to "immediately identify and segregate any and all information taken by Defendants from Colwell Consulting, LLC."  TRO at 23–24.

Defendants became aware of the Temporary Restraining Order on August 14, 2024, the day it was entered. Defs.' Resp. at Ex. G ("Papageorge Declaration" or "Papageorge Decl.") at 2 (Doc. 37-6); see also Pl.'s Mot. at Ex. 4 (Doc. 29-2) (Defendants' counsel stating "I believe he stopped Wednesday after reading the ruling . . ."). The following day, August 15, 2024, Papageorge sat for a deposition in a case involving one of Colwell's clients. Pl.'s Mot. at 4, Ex. 4; Papageorge Decl. at 2. Through an email dated August 16, 2024, Plaintiff's counsel expressed her belief that Defendants would be in violation of the Temporary Restraining Order if they continued servicing Colwell's clients and demanded that Defendants notify relevant clients immediately that Defendants were unable to continue work. Defs.' Resp. at Ex. H (Doc. 37-8). On August 17, 2024, Defendants' counsel provided to Plaintiff's counsel a list of at least 12 Colwell clients from whom Defendants had accepted work since leaving Colwell. Pl.'s Mot. at 4, Ex. 3.[1] In the same correspondence, Defendants' counsel expressed that:

> Mr. Papageorge believes stopping work on [a] permanent basis for cases in which he has already started work will cause more damage

---

[1] Defendants assert that this exhibit cannot be considered by the Court because it is part of settlement discussions. Def.'s Resp. at n.4. Federal Rule of Evidence 408 prohibits use of "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Because the email has been offered to support Plaintiff's argument that Defendants understood and violated the Temporary Restraining Order, it is not precluded under the Federal Rules of Evidence.

>rather than less in contravention to the purpose of the [Temporary Restraining Order], he will agree to stop work on the above cases as we work with you on a final resolution.

Id. at Ex. 3.  Through counsel, Defendants also called Plaintiff's attention to the "need to discuss how to best deal" with two cases with impending deadlines for former Colwell clients.  Id.  In subsequent emails, Plaintiff expressed its belief that Defendants were required to cease all work for Colwell's clients following the entry of the Temporary Restraining Order.  Id. at Ex. 4.  Through an email dated August 19, 2024, Defendants' counsel informed Plaintiff that Defendants had stopped working for Colwell's clients "last week."  Id.  Later that day, after further requests for specificity from Plaintiff's counsel, Defendants disclosed that Papageorge had participated in a deposition on August 15, 2024 for a former Colwell client and that Papageorge completed work on "logistics regarding submitting completed work and . . . communicating the restraints in the [Temporary Restraining Order]."  Id.

During the course of discovery, Defendants produced a chart of billable hours reflecting work done for Colwell's clients.  Def.'s Resp. at Exs. 6–7.  Despite being dated August 20, 2024, the chart of billable hours only reflected work performed through August 14, 2024 and did not include the deposition for Colwell's former client in violation of the TRO.  Pl.'s Mot. at Ex. 7.  Defendants provided updated time entries on August 27, 2024, explaining that the only work

performed after August 14, 2024 was the August 15 deposition for Colwell's former client. Defs.' Resp. at Ex. C (Doc. 37-3). More than two weeks after the Temporary Restraining Order was entered, the Parties reached an agreement to allow Defendants to continue work on two cases for Colwell's clients, including the case in which Papageorge sat for the deposition, which Plaintiff's counsel explained was because Defendants had already put in significant work on those cases. Oral Arg. (Aug. 17, 2024) at 33:48–37:40 (Doc. 42).

Plaintiff filed its Motion on August 27, 2024, alleging that Papageorge's participation in the deposition violated the Temporary Restraining Order. Pl.'s Mot. Subsequent to the filing of Plaintiff's Motion, the Parties filed a Joint Motion for Entry of Stipulated Preliminary Injunction, which prohibited, in relevant part, Defendants from "directly or indirectly soliciting, accepting work from, or servicing Colwell's clients," based on an agreed upon list, and "directly or indirectly providing services, offering services, or engaging in targeted communications regarding any services to Colwell's clients." Joint Mot. Entry Stipulated Prelim. Inj. (Doc. 33). The Court entered the Preliminary Injunction on September 6, 2024. Order (Sept. 6, 2024) (Doc. 35). Oral argument was held on Plaintiff's Motion on September 17, 2024. Oral Arg.

## JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction over Plaintiff's federal Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq., claims pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966); Fed. R. Civ. P. 70(e) ("The court may also hold the disobedient party in contempt."). The initial burden to establish civil contempt falls to the moving party to demonstrate by clear and convincing evidence that the contemnors violated a specific and definite order of the court. Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locs. 21 & 4, 721 F.3d 1122, 1129 (9th Cir. 2013); FTC v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999). The burden then shifts to the alleged contemnor to demonstrate why compliance with the order was not possible. Affordable Media, LLC, 179 F.3d at 1239. A violation need not be willful to warrant contempt and there is no good faith exception to a party's obligation to comply with a court order. See In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 695 (9th Cir. 1993). "'Substantial compliance' with the court order is a defense to civil

contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." Id. (quoting Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc., 689 F.2d 885, 889 (9th Cir. 1982)). A court may impose sanctions for civil contempt to either coerce compliance with the court's order or to compensate the moving party for injuries resulting from the contemptuous conduct. United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947).

## DISCUSSION

Plaintiff alleges that civil contempt is appropriate for two reasons. First, Plaintiff contends that Defendants misled the Court in their representations prior to the Temporary Restraining Order. Pl.'s Mot. at 8–9. Second, Plaintiff argues that Papageorge violated the Temporary Restraining Order by sitting for a deposition on behalf of Colwell's clients. Id. at 6–8.

Plaintiff argues that Papageorge violated the Temporary Restraining Order when he sat for a deposition on behalf of one of Colwell's clients the day after the Temporary Restraining Order was entered. Id. Defendants contend that because the ordered language of the Temporary Restraining Order only expressly references "accepting" and "soliciting" work from Colwell's clients, Papageorge's sitting for the deposition and continuing logistical activities related to submitted

completed work did not violate the Temporary Restraining Order. Defs.' Resp. at 4–5.

Defendants argue that the language of the non-solicitation provision was discussed in both the briefing and oral argument for the Temporary Restraining Order. Id. at 4; Oral Arg. at 48:56–49:37. This language provides, in relevant part:

> While employed by Employer and for a one-year period after termination of that employment for any reason, Employee has not and will not (either as an individual for Employee's own enterprise, or as a partner, joint venturer, officer, employee, agent, salesman, consultant, or 5% or more shareholder of any entity or third party) . . . *accept*, *service*, or *solicit*, directly or indirectly, any vendor, customer, merchant, account, or prospective vendor of Employer with whom Employee had contact during employment with Employer.

Pl.'s Appl. TRO at Ex. 4 (emphasis added). In the Temporary Restraining Order, this Court "ordered that Defendants are restrained from directly or indirectly *soliciting* or *accepting* work from any client that Papageorge worked with while employed by Colwell Consulting, LLC." TRO at 23 (emphasis added). Defendants contend that in excluding the word "servicing" in the ordered paragraphs, the Court enjoined only "accepting" and "soliciting" work and permitted Defendants to continue work already accepted from Colwell's clients. Defs.' Resp. at 5. This interpretation of the Temporary Restraining Order is both unreasonable and inconsistent with Papageorge's own conduct.

In the Temporary Restraining Order, the Court did not distinguish "service" from "solicit" and "accept." Papageorge's attempt to justify his misconduct after the Temporary Restraining Order was issued illustrates that he understood that continuing to work for Colwell's clients was a violation of the Court's restrictions. Papageorge was aware of the Temporary Restraining Order on August 14, 2024, the day it was entered. See Papageorge Decl. at 2. On that day, Papageorge recorded 8.7 hours of work described as "prepare for deposition." Pl.'s Mot. at Ex. 7. At oral argument, Defendants' counsel testified that this work was completed before Papageorge read the Temporary Restraining Order, which was entered around mid-day. Oral Arg. at 59:47–1:00:06. In an email to Plaintiff's counsel, Defendants' counsel indicated that she believed that Papageorge had "stopped [work] Wednesday after reading the ruling." Pl.'s Mot. at Ex. 4. This suggests that Papageorge understood at the time of reading the ruling that continued work was prohibited by the Temporary Restraining Order. Defendants' counsel also stated that Papageorge "is not a lawyer, he was doing the best he could." Oral Arg. at 48:00–48:10. The Court disagrees with this characterization. A reasonable layperson, after receiving a Court order that imposes a restriction on his conduct, would reach out to counsel to ensure that he understood the limitations and obligations imposed by the TRO to avoid violating the order, particularly with respect to continuing to work for clients whom Papageorge is accused of stealing

from Colwell in violation of the non-solicitation agreement. Defendants' failure to take this minimal step to confirm whether participation in the deposition was permissible suggests that he was avoiding an undesirable answer. Counsel for the Parties held a meeting on the morning of August 16, 2024 to discuss how to handle the Colwell clients who Defendants were already servicing. Oral Arg. at 1:09:50–1:10:40. Had Papageorge raised the issue with counsel, or at least informed counsel of the deposition, after reading the Temporary Restraining Order on August 15 or the morning of August 16, it is possible that a resolution might have been reached regarding the deposition and the instant contempt action could have been avoided. Instead, Papageorge took the reckless action of moving forward with the deposition under the cloak of ignorance. Defendants' failure to disclose the deposition for several days, despite multiple requests from Plaintiff, and the omission of the deposition from the later-provided timesheet further suggest efforts to conceal the prohibited conduct.

In defense of his behavior, Papageorge again raises the argument that Colwell's transfer of files to PPG at the request of clients constituted a waiver of the non-solicitation provision. Defs.' Resp. at 8. The Court addressed this argument in the Temporary Restraining Order and found it unsupported and unconvincing. TRO at 13–15. Defendants have again failed to provide any legal support for this argument. See Defs.' Resp. at 8–12. In order to accept

Defendants' position, the Court would need to conclude that the only way for Colwell to preserve the non-solicitation provision would have been to refuse to abide by its clients' requests, potentially damaging the relationship between Colwell and its clients. It would have been unreasonable for Colwell, or any similar business, to essentially hold hostage work that had been commissioned by a client once that client had indicated its desire to conclude the business relationship. As the Court explained in the Temporary Restraining Order, the restrictive covenants impose a burden on Papageorge not to accept Colwell's clients. TRO at 14. In abiding by a client's request to end its business relationship and to transfer its files to a new firm, Colwell did not negate Papageorge's obligations. Defendants cannot now attempt to shield themselves with an argument that the Court has previously rejected.

    Defendants also contend that sitting for the deposition and continuing to work with Colwell's clients from whom they had already accepted work was reasonable because it was likely to avoid injury to the clients and potential liability. At oral argument, Defendants attested that clients have contacted both Colwell and Defendants to express frustration and anger with the disruption caused by the TRO and Defendants being required to cease work. Oral Arg. at 49:48–52:08. Defendants further stated that Papageorge believed that the Court intended to exclude "servicing" from the Temporary Restraining Order in order to avoid harm

... 

to these clients and potential damages to the Parties. <u>Id.</u> at 51:36–52:08. Papageorge's purported understanding of the Court's intention finds no support in the language of the Temporary Restraining Order. At no point did the Court discuss the potential impact of the restraints on the Colwell clients from whom Defendants had accepted work. In fact, Defendants made no showing to the Court of the number of Colwell's clients that they had accepted, the degree of investment by those clients, or the various stages of litigation involved. Reading the Temporary Restraining Order in its totality, there is no reason to conclude that the Court excluded the term "servicing" to protect client interests. The Court determined that there was a likelihood of success that the non-solicitation provision precluded Defendants from accepting Colwell's clients. TRO at 11–15. To interpret the Temporary Restraining Order as allowing Defendants to continue to work for those clients from whom they were prohibited from initially accepting work requires the illogical conclusion that the Court tacitly approves the conduct it simultaneously condemns. The Court does not allow the burglar to keep the spoils of his crime merely because he is caught with the stolen goods afterwards.

## CONCLUSION

The Court finds it appropriate to hold Defendants in civil contempt and to impose a monetary sanction for violation of the Temporary Restraining Order.

Plaintiff is also entitled to an award of costs and fees incurred in connection with this contempt motion.

Upon consideration of Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order (Doc. 29), Defendants' Response to Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order (Doc. 37), Plaintiff's Reply in Support of its Cross-Motion to Hold Defendants in Contempt (Doc. 40), and all other documents and proceedings in this action, it is hereby

**ORDERED** that Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order (Doc. 29) is granted; and it is further

**ORDERED** that Defendants are held in civil contempt; and it is further

**ORDERED** that Defendants shall be assessed a monetary fine as a sanction for participating in the August 15, 2024 deposition in violation of the Temporary Restraining Order. Plaintiff shall file on or before September 27, 2024 a brief detailing the damages suffered as a result of Defendants' violation of the Temporary Restraining Order. Defendants shall file their response on or before October 4, 2024; and it is further

**ORDERED** that Defendants shall be assessed additional fines for every day that Defendants directly or indirectly perform any work for or otherwise service

Court No. 2:24-cv-01824                                                                                  Page 14

any client that Papageorge worked with while employed by Colwell Consulting, LLC; and it is further

**ORDERED** that Defendants shall reimburse Plaintiff for reasonable costs and fees incurred in litigating Plaintiff's Cross-Motion to Hold Defendants in Contempt for Violating Temporary Restraining Order.  Plaintiff shall file an updated submission of fees and costs on or before September 27, 2024. Defendants shall file their response to Plaintiff's fees and costs submission on or before October 4, 2024; and it is further

**ORDERED** that the Parties shall file on or before September 27, 2024 a list of clients that Papageorge worked with while employed by Colwell Consulting, LLC from whom Defendants have accepted work.  The Parties shall also identify any cases or clients that they have agreed to exclude from the restrictions of the Temporary Restraining Order.  The filing may be made under seal and should be continuously updated to reflect changes during the pendency of this case.

IT IS SO ORDERED this 20th day of September, 2024.


                                                             /s/ Jennifer Choe-Groves
                                                             Jennifer Choe-Groves
                                                             U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.