WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **COLWELL CONSULTING LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MICHAEL PAPAGEORGE AND PPG CONSULTING LLC,**<br><br>Defendants. | Court No. 2:24-cv-01824-JCG |

## OPINION AND ORDER

This Court entered an Opinion and Order on September 20, 2024 finding Defendant Michael Papageorge ("Papageorge") to be in civil contempt for violating the Court's August 14, 2024 Temporary Restraining Order. Op. & Order (Sept. 20, 2024) ("Contempt Order") (Doc. 45); Op. & Order (Aug. 14, 2024) ("Temporary Restraining Order" or "TRO") (Doc. 20). Before imposing sanctions, the Court ordered additional briefing by the Parties on the quantum of damages, costs, and fees that resulted from Papageorge's contemptuous conduct. Contempt Order at 13–14. Plaintiff Colwell Consulting, LLC ("Colwell" or "Plaintiff") filed Plaintiff's Submission of Attorneys' Fees Related to Motion to Hold Defendants in Contempt and Plaintiff's Statement of Damages Resulting from Defendants' Violation of the Temporary Restraining Order and Attorneys' Fees Incurred

Related to the Motion to Hold Defendants in Contempt.  Pl.'s Submission Att'ys Fees Related Mot. Hold Defs. Contempt (Doc. 44); Pl.'s Statement Damages Resulting Defs.' Violation TRO Att'ys Fees Incurred Related Mot. Hold Defs. Contempt ("Pl.'s Br.") (Doc. 48).  Defendants Papageorge and PPG Consulting, LLC (collectively, "Defendants") filed Defendants' Response to Plaintiff's Statement of Damages.  Defs.' Resp. Pl.'s Statement Damages ("Defs.' Resp.") (Doc. 49).

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case as set forth in its August 14 and September 20, 2024 Opinions & Orders.  Contempt Order at 2–5; TRO at 1–6.  This case involves claims that Defendants breached restrictive covenants and misappropriated trade secrets and proprietary information after Papageorge left Colwell's employment.  See Compl. (Doc. 1). Plaintiff filed an Application for Temporary Restraining Order asking the Court to restrain Defendants' ability to do business with clients that Papageorge worked with while employed by Colwell and to identify and segregate any information taken by Papageorge from Colwell and to prevent use of such information.  Pl.'s Appl. TRO (Doc. 6).  After briefing and oral argument, the Court entered a Temporary Restraining Order in this case on August 14, 2024 that: (1) "restrained [Defendants] from directly or indirectly soliciting or accepting work from any

client that Papageorge worked with while employed by Colwell Consulting, LLC" and (2) required Defendants to "immediately identify and segregate any and all information taken by Defendants from Colwell Consulting, LLC." TRO at 23–24.

Defendants became aware of the Temporary Restraining Order on August 14, 2024, the day it was entered. Defs.' Resp. Pl.'s Cross-Mot. Hold Defs. Contempt Violating TRO (Doc. 37) at Ex. G ("Papageorge Declaration" or "Papageorge Decl.") at 2 (Doc. 37-6); see also Pl.'s Resp. Defs.' Mot. Vacate Prelim. Inj. Hearing & Cross-Mot. Hold Defs. Contempt Violating TRO ("Plaintiff's Contempt Motion" or "Pl.'s Contempt Mot.") (Doc. 29) at Ex. 4 (Doc. 29-2) (Defendants' counsel stating "I believe he stopped Wednesday after reading the ruling . . ."). The following day, August 15, 2024, Papageorge sat for a deposition in a case involving one of Colwell's clients. Pl.'s Contempt Mot. at 4, Ex. 4; Papageorge Decl. at 2. Through an email dated August 16, 2024, Plaintiff's counsel expressed her belief that Defendants would be in violation of the Temporary Restraining Order if they continued servicing Colwell's clients and demanded that Defendants notify relevant clients immediately that Defendants were unable to continue work. Defs.' Resp. at Ex. H (Doc. 37-8). Papageorge sent emails to at least ten clients advising of the Temporary Restraining Order and that he would not be able to continue work on matters for those clients. Pl.'s Contempt Mot. at Ex. 9. More than two weeks after the Temporary Restraining Order was

entered, the Parties reached an agreement to allow Defendants to continue work on two cases for Colwell's clients, including the case in which Papageorge sat for the deposition, which Plaintiff's counsel explained was because Defendants had already put in significant work on those cases. Oral Arg. (Aug. 17, 2024) at 33:48–37:40 (Doc. 42).

Plaintiff filed its Contempt Motion on August 27, 2024, alleging that Papageorge's participation in the deposition violated the Temporary Restraining Order. Pl.'s Contempt Mot. Subsequent to the filing of Plaintiff's Motion, the Parties filed a Joint Motion for Entry of Stipulated Preliminary Injunction, which prohibited, in relevant part, Defendants from "directly or indirectly soliciting, accepting work from, or servicing Colwell's clients," based on an agreed upon list, and "directly or indirectly providing services, offering services, or engaging in targeted communications regarding any services to Colwell's clients." Joint Mot. Entry Stipulated Prelim. Inj. (Doc. 33). The Court entered the Preliminary Injunction on September 6, 2024. Order (Sept. 6, 2024) (Doc. 35). Oral argument was held on Plaintiff's Contempt Motion on September 17, 2024. Oral Arg.

The Court granted Plaintiff's Contempt Motion and found Papageorge to be in civil contempt. Contempt Order at 13. The Parties were ordered to provide additional briefing on the quantum of Plaintiff's damages and incurred costs and fees related to Papageorge's violation of the Court's order. Id. at 13−14. On

September 24, 2024, before briefs were filed, the Parties notified the Court that they "were able to come to an agreement on all material terms and are in the process of preparing formal settlement documents."

## JURISDICTION AND LEGAL STANDARD

The Court has jurisdiction over Plaintiff's federal Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq., claims pursuant to 28 U.S.C. § 1331, which grants the district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966); Fed. R. Civ. P. 70(e) ("The court may also hold the disobedient party in contempt."). Unlike criminal contempt sanctions, civil contempt sanctions are remedial, not punitive. Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992). Sanctions for civil contempt may be employed to either coerce compliance with a court order or to compensate the complainant party for losses sustained due to the contemptuous conduct. United States v. United Mine Workers of Am., 330 U.S. 258, 303–04 (1947). A sanctions award must be "based upon evidence of complainant's actual loss," id. at 304, and "'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based,"

Goodyear Tire & Rubber Co. v. Haegar ("Goodyear"), 581 U.S. 101, 108 (2017) (quoting United Mine Workers v. Bagwell, 512 U.S. 821, 834 (1994)).

## DISCUSSION

Because the Parties have reached a settlement resolving this case, there is no longer a need to coerce compliance with the Court's Temporary Restraining Order or Preliminary Injunction. The Court is left only to determine what sanction is appropriate to compensate Plaintiff for damages and costs resulting from Papageorge's conduct. Plaintiff contends that it has suffered a loss of business as a result of Papageorge's violation of the Temporary Restraining Order and incurred attorneys' fees and costs in litigating the Contempt Motion. Pl.'s Br. The Court addresses each of these contentions in turn.

### I. Damages Suffered from Loss of Business

Papageorge violated the Temporary Restraining Order by participating in the August 15, 2024 deposition on behalf of one of Colwell's clients. Contempt Order at 7–14. Papageorge billed the client $2,010.00 for sitting for the deposition and $2,914.59 for preparatory work that occurred on August 14, 2024, the day the Temporary Restraining Order was issued. Pl.'s Br. at Ex. 1 at 1. Plaintiff avers that the total billed amount of $4,924.59 constitutes the minimum amount of damages suffered because of Papageorge's violation. Pl.'s Br. at 2.

Plaintiff also contends that Papageorge violated the Temporary Restraining Order in his communications with at least ten clients advising that he was restrained from continuing work for the clients. Id. at 2–3. Specifically, Plaintiff argues that the inclusion of the language "I attempted to reach a quick resolution to this issue with [Colwell], but was unable to do so," portrayed Colwell in a negative light. Id. at 2. Plaintiff contends that it was contacted after Papageorge's email by several clients requesting that Papageorge be allowed to continue work and released from any potential damages. Id. at 3. Plaintiff believes that it has lost some of these clients. Id.

The Court may impose a sanction only to compensate for damages that would not have occurred but for the contemptor's bad conduct. Goodyear, 581 U.S. at 108; Fox v. Vice, 563 U.S. 826, 836 (2011). The Court is not convinced that Plaintiff suffered a loss of business because of Papageorge's violation of the Temporary Restraining Order. At the time of the Temporary Restraining Order, the deposition was already scheduled and Papageorge had completed at least some of the preparatory work. The Parties later came to an agreement to allow Defendants to continue work on the case involving the deposition. Oral Arg. (Aug. 17, 2024) at 33:48–37:40. By sitting for the deposition, Papageorge did not deprive Plaintiff of work that it would have enjoyed but for the violation.

Plaintiff's contention that Papageorge's email to clients was a violation of the Temporary Restraining order and resulted in a loss of business is similarly unconvincing. The Court's Temporary Restraining Order did not impose any requirement on Papageorge regarding how to notify clients that he was required to cease work. See Contempt Order. Plaintiff contends that the language used in the email resulted in a loss of clients. Regardless of the specific language used, the end result would have been the same—Defendants would have been required to cease work for the clients. Plaintiff has not demonstrated that those clients would have returned to Colwell or viewed Colwell in a positive light if Papageorge had used more benign language. Plaintiff has also failed to quantify any damages that were suffered because of the email. The Court finds that sanctions are not appropriate to compensate Plaintiff for loss of business resulting from Papageorge's violation of the Temporary Restraining Order.

## II.   Attorneys' Fees

Plaintiff seeks $24,742.50 for attorneys' fees and costs incurred in litigating the Contempt Motion. Pl.'s Br. at 3. Defendants argue that Plaintiff's billing is unreasonable in comparison to the amount that Papageorge earned by sitting for the deposition. Defs.' Resp. at 3–4. Defendants also argue that the billing submitted to the Court includes duplicative work by the involved attorneys. Id.

In determining the reasonableness of attorneys' fees and costs, courts apply the "lodestar method." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). A reasonable hourly rate is based on "the experience, skill, and reputation of the attorney requesting fees." See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

The Court begins its analysis by determining a reasonable number of hours that should have been expended in litigating the Contempt Motion. Plaintiff has reported that two attorneys, Stephanie Quincy and Jorge Coss, and one paralegal, Sidney Turtchin, worked on this matter. Pl.'s Br. at Ex. 2. Litigation of the Contempt Motion involved multiple filings and an oral argument. Plaintiff's billing record reflects that Quincy recorded 15.9 hours, Coss recorded 24.9 hours, and Turtchin recorded 6.4 hours. Id. at Ex. 2 at Ex. A. Some of the hours reported reflect work not related to the contempt action.

Quincy billed 0.3 hours on August 23, 2024 for reviewing Defendants' Notice of No-Objection to Preliminary Injunction and Expedited Motion to Vacate Preliminary Injunction Hearing as Moot. Id.; Defs.' Notice No-Obj. Prelim. Inj. & Mot. Vacate Prelim. Inj. Hearing ("Defendant's Notice of No-Objection") (Doc. 25). This work is unrelated to the contempt action. Quincy also billed 2.6 hours

on August 26, 2024 and 2.5 hours on August 27, 2024 for work on both the Contempt Motion and Defendant's Notice of No-Objection.  Pl.'s Br. at Ex. 2 at Ex. A.  The Court finds it reasonable to allocate fifty percent of these hours, 2.55 hours, to work related to the contempt action.  Quincy's remaining billing, totaling 10.5 hours, relates only to work connected to the contempt action.  The Court finds that 13.05 hours is a reasonable number of hours for work performed by Quincy related to the contempt action.

  Coss billed 0.9 hours on August 23, 2024 for work on Defendants' Notice of No-Objection.  Id.  On September 24 and 25, 2024, Coss billed 0.5 hours for work related to the Court's partial denial of a motion to stay deadlines.  Id.  The 1.4 hours billed by Coss for these tasks are unrelated to the contempt action and not appropriate for reimbursement.  Coss billed 2.4 hours on August 24, 2024, 5.1 hours on August 26, 2024, and 1.1 hours on August 27, 2024 for combined work on the Contempt Motion and Defendant's Notice of No-Objection.  Id.  The Court finds it reasonable to allocate fifty percent of these hours, 4.3 hours, to work related to the contempt action.  Coss' remaining billing, totaling 14.9 hours, relates only to work connected to the contempt action.  The Court finds that 19.2 hours is a reasonable number of hours for work performed by Coss related to the contempt action.

Turtchin billed 0.8 hours on August 26, 2024 and 4.4 hours on August 27, 2024 for work related to both the Contempt Motion and Defendant's Notice of No-Objection.  Id.  The Court finds it reasonable to allocate fifty percent of these hours, 2.6 hours, to work related to the contempt action.  Turtchin's remaining billing, totaling 1.2 hours, relates only to work connected to the contempt action.  Id.  The Court finds that 3.8 hours is a reasonable number of hours for work performed by Turtchin related to the contempt action.

Having determined a reasonable number of hours for relevant work, the Court next determines reasonable hourly rates.  Quincy is a shareholder with the law firm of Greenberg Traurig, LLP and billed a rate of $800.00 per hour for this matter.  Id. at Ex. 2 at 2.  Quincy has more than 30 years of experience and focuses her practice primarily on labor and employment litigation.  Id. at 3.  Coss is an associate with Greenberg Traurig, LLP and has been practicing law for four years.  Id.  Coss' practice focuses on labor and employment litigation.  Id.  Coss regularly bills $475.00 per hour but reduced his rate to $425.00 per hour for this case.  Id.  Turtchin is a paralegal with Greenberg Traurig, LLP that performed work in this case.  Id.  Turtchin has been a paralegal in the state of Arizona for seven years.  Id.  Her regular billing rate is $240.00 per hour but was reduced in this case to $225.00 per hour.  Id.

Quincy declares that "[n]ot many attorneys regularly handle cases involving restrictive covenants and trade secrets. They are very demanding not only on counsel but also on our staff. These hourly rates are also comparable to the hourly rates prevailing in the community for similar legal work." Defendants do not contest that the rates billed for Quincy, Coss, and Turtchin are reasonable based on their experience, skills, and reputations and the local market. See Defs.' Resp. The Court finds Quincy's rate of $800.00 per hour, Coss' rate of $425.00 per hour, and Turtchin's rate of $225.00 per hour to be reasonable for this case. Therefore, Quincy's reasonable billing for this matter is $10,440.00, Coss' reasonable billing for this matter is $8,160.00, and Turtchin's reasonable billing for this matter is $855.00.

The total reasonable legal fees for Quincy, Coss, and Turtchin amount to $19,455.00. Defendants contend that this amount is unreasonable in comparison to the profits earned by Papageorge for sitting for the deposition. Defs.' Resp. at 3–4. Defendants are correct that Plaintiff's legal fees exceed the $4,924.59 Papageorge earned through preparing for and participating in the deposition; however, the fees are a reasonable amount for the work that resulted from Papageorge's violation of the Temporary Restraining Order. It would be unjust for the Court to restrict Plaintiff's recovery solely because the benefits of Papageorge's misconduct did not justify the resulting consequences.

Defendants also argue that Plaintiff's billing is unreasonable because it reflects duplicative work. Id. Defendants specifically cite examples in which both Quincy and Coss billed for reviewing the same filing and preparing to attend the same hearing. Id. In a case in which multiple attorneys represent a party, it is necessary for members of a legal team to perform common actions. It would not have been possible for Plaintiff's attorneys to perform their work if only one member of the team read filings or prepared for hearings. The Court does not find it unreasonable that Quincy's and Coss' billing reflect some common tasks.

In summary, the Court finds that $19,455.00 is a reasonable amount for Plaintiff's attorneys' fees and costs resulting from Papageorge's violation of the Temporary Restraining Order. This expense would not have been incurred by Plaintiff but for Papageorge's contemptuous conduct and shall be awarded as a sanction for Papageorge's civil contempt.

## CONCLUSION

Upon consideration of the Court's September 20, 2024 Opinion and Order (Doc. 45), Plaintiff's Submission of Attorneys' Fees Related to Motion to Hold Defendants in Contempt (Doc. 44), Plaintiff's Statement of Damages Resulting from Defendants' Violation of the Temporary Restraining Order and Attorneys' Fees Incurred Related to the Motion to Hold Defendants in Contempt (Doc. 48),

Defendants' Response to Plaintiff's Statement of Damages (Doc. 49), and all other documents and proceedings in this action, it is hereby

**ORDERED** that Defendants shall reimburse Plaintiff the amount of $19,455.00 for attorneys' fees and costs as a sanction for Papageorge's breach of the Court's Temporary Restraining Order.

IT IS SO ORDERED this 15th day of October, 2024.

                                            /s/ Jennifer Choe-Groves
                                              Jennifer Choe-Groves
                                            U.S. District Court Judge[*]

---

[*] Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.